**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **INGRID CAPLES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ROBERT F. KENNEDY, JR.,**[1]<br>*Secretary, Department of Health and Human Services*,<br><br>**Defendant.** | ) | **Case No. 21-cv-2610 (APM)** |

**MEMORANDUM OPINION AND ORDER**

**I.**

Plaintiff Ingrid Caples worked for the Department of Health and Human Services (HHS) from 2007 until 2017, when she retired. *See* Am. Compl., ECF No. 11 [hereinafter Am. Compl.], at 2, 21. She now claims unlawful discrimination and retaliation arising from Defendant's denials of several telework requests and a series of disciplinary actions, including absent-without-leave (AWOL) charges, a letter of reprimand, and a suspension. *Id.* at 21–25. Defendant moves for summary judgment on Plaintiff's sex discrimination, retaliation, and constructive discharge claims under Title VII and her age discrimination claim under the Age Discrimination in Employment Act (ADEA). Def.'s Mot. for Summ. J., ECF No. 57 [hereinafter Def.'s Mot.]. For the reasons that follow, Defendant's motion is granted in part and denied in part.

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes the current Secretary of Health and Human Services as the defendant in this case.

## II.

Plaintiff began working for the Assistant Secretary for Preparedness (ASPR) at HHS in 2007. *See* Am. Compl. at 2. Following several organizational realignments between 2010 and 2016, Robert Bastani replaced Captain Laura Draski as Plaintiff's immediate supervisor, and Stephen Saletta became Plaintiff's second line supervisor. *Id.* at 6–7; Def.'s Stmt. of Material Facts Not in Genuine Dispute, ECF No. 57-1 [hereinafter Def.'s Stmt. of Facts], ¶¶ 4–7. Benjamin Goldhaber, the Chief Operating Officer (COO), became Plaintiff's third line supervisor. *Id.*

In 2015, Goldhaber implemented a new telework policy intended to increase "face-to-face relationships with ASPR staff and partner organizations."[2] Def.'s Mot., Ex. B, ECF No. 57-3 [hereinafter Def.'s Ex. B], at 31.[3] Goldhaber explained to ASPR leadership that the change in policy would include "a limitation on extended telework and flexi-pace solutions for COO staff." *Id.* "[E]xisting flexi-pace and extended telework agreements," however, would be "sustained" or "grandfathered" into the new policy. *Id.*

Starting in June 2015, Plaintiff's managerial chain began denying her requests for extended telework or placement at an alternate duty station that would allow her to care for her ill father. Def.'s Ex. B at 34–35; Def.'s Mot., Ex. D, ECF No. 57-4, at 2. Plaintiff maintains, and Defendant does not dispute, that similar previous requests had been granted. *See* Pl.'s Opp'n to Mot. for Summ. J. [hereinafter Pl.'s Opp'n], Ex. 4, ECF No. 60-4 [hereinafter Pl.'s Ex. 4.], at 31:16–38:6;[4] *see generally* Def.'s Mot.

---

[2] The parties dispute the telework policy's implementation date. Citing to Goldhaber's email dated July 3, 2014, Defendant maintains the policy started in 2014. *See* Def.'s Stmt. of Facts ¶ 11; Def.'s Ex. B at 31. Plaintiff contends that the policy was only formally communicated to staff and officially implemented in 2015. *See* Pl.'s Opp'n, Pl.'s Resp. to Def.'s Stmt. of Material Facts, ECF No. 60-16, ¶ 11. Viewing the record in the light most favorable to Plaintiff, as the court must, the court will assume the telework policy was implemented in 2015. In any event, this fact does not affect the court's analysis.

[3] Citations to Defendant's exhibits are to the CM/ECF page number unless otherwise specified.

[4] Citations to transcripts are to the original page numbers.

Several disciplinary actions followed. In December 2015, Bastani issued Plaintiff a written reprimand. *See* Def.'s Ex. B at 41–43. In February 2016, he charged her with three hours of AWOL for arriving late to work. *See* Def.'s Mot., Ex. A, ECF No. 57-2 [hereinafter Def.'s Ex. A], at 107:16–109:6. And in March 2016, Bastani issued Plaintiff a notice of proposed 14-day suspension, which Saletta later approved. *See* Def's Ex. B at 46–49. That same month, Bastani charged Plaintiff with one hour of AWOL for an extended lunch break. *See* Pl.'s Ex. 4 at 109:10–111:7. In December 2016, Bastani issued Plaintiff a proposal to remove her from federal service, but Plaintiff retired in January 2017. *See* Am. Compl. at 21; Def.'s Stmt. of Facts ¶¶ 49–50.

In September 2015, Plaintiff filed a formal equal employment opportunity (EEO) complaint. Am. Compl. at 18. Upon the unfavorable resolution of Plaintiff's administrative action in 2021, she filed the instant suit pro se claiming violations of several federal employment laws.[5] *See generally* Compl., ECF No. 1; Am. Compl. at 21–26. She claims discrimination on the basis of her age and sex and retaliation for prior protected activity. *See* Am. Compl. at 14, 16, 17, 23–25. Defendant now moves for summary judgment on Plaintiff's remaining discrimination and retaliation claims.[6]

**III.**

Summary judgment is appropriate if, "viewing the evidence in the light most favorable to the non-movant," "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Breiterman v. U.S. Capitol Police*, 15 F.4th 1166, 1172 (D.C. Cir. 2021) (internal quotation marks omitted). "Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing

[5] As of February 2024, Plaintiff is no longer proceeding pro se. *See* Notice of Appearance, ECF No. 34.
[6] The court previously dismissed Plaintiff's civil rights, hostile work environment, and EEO processing claims, as well as claims under the Whistleblower Protection Act, Family and Medical Leave Act, and Fair Labor Standards Act. *See* Mem. Op. & Order, ECF No. 33, at 10.

summary judgment to 'set forth specific facts showing that there is a genuine issue for trial.'" *Taborn v. Wash. Metro. Area Transit Auth.*, 209 F. Supp. 3d 68, 71 (D.D.C. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The non-movant "must offer more than mere unsupported allegations or denials." *Id.* at 71 (internal quotation marks omitted). "In other words, if the non-movant's evidence is 'merely colorable' or 'not significantly probative,' summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249–50).

**IV.**

Title VII prohibits federal government employers from engaging in "any discrimination based on . . . sex," 42 U.S.C. § 2000e-16(a), or in retaliation for participating in protected activity, *id.* § 2000e-3(a).[7] The ADEA prohibits the same "based on age." 29 U.S.C. § 633a(a). The *McDonnell Douglas* burden-shifting framework governs claims brought under both statutes where the plaintiff relies on circumstantial evidence. *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). "First, the plaintiff carries the burden of establishing a prima facie case of . . . discrimination." *Id.* Next, the burden "shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Id.* If the employer does so, "the burden then shifts back to the plaintiff to show that the employer's stated reason for its actions was in fact pretext for unlawful discrimination." *Id.* The same burden-shifting framework governs "retaliation claims that rely on indirect, circumstantial evidence." *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019).

On summary judgment, however, "whether the employee made out a prima facie case is almost always irrelevant." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 492 (D.C. Cir. 2008).

---

[7] "The D.C. Circuit has routinely applied Title VII's antiretaliation rule to federal employers." *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 12 n. 9 (D.D.C. 2023) (citing *Cruz v. McAleenan*, 931 F.3d 1186, 1193–94 (D.C. Cir. 2019)).

At that stage, an employer ordinarily will have articulated a legitimate, non-discriminatory reason for the challenged action. *See id.* at 493. And, once the employer has done so, "the question whether the employee actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture." *Id.* at 493–94 (cleaned up). The district court then "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of" a prohibited classification? *Id.* at 494.

"[A] Title VII plaintiff is not limited to challenging the employer's explanation; she can also avoid summary judgment by presenting other evidence . . . that permits an inference of discrimination." *Jeffries v. Barr*, 965 F.3d 843, 862 (D.C. Cir. 2020) (internal quotation marks omitted). Such evidence may include "discriminatory statements or attitudes on the part of the employer." *Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012).

**A.**

The court first considers Plaintiff's sex discrimination claim. Plaintiff offers evidence concerning (1) supervisors' inconsistent application of the telework policy, resulting in denials of telework and alternate duty station requests; (2) inconsistent reprimands; (3) inconsistent issuance of AWOL charges; (4) her suspension; and (5) Bastani subjecting her to an "aggressive management style" and more restrictive reporting requirements as compared with her male counterparts. *See* Pl.'s Opp'n at 14–18. Defendant largely does not dispute that it took the contested actions but argues Plaintiff cannot show that they were discriminatory. *See* Def.'s Mot. at 12, 14–18. Although a close call, the court finds that a jury could reasonably infer discriminatory intent on the basis of Plaintiff's sex.

Before outlining the evidence favoring Plaintiff, her comparator evidence warrants discussion, as she relies heavily on it. The court agrees with Defendant that that evidence comes up short. "Evidence of an employer's more favorable treatment to similarly situated employees without the plaintiff's protected characteristic may indicate discriminatory animus." *Breiterman*, 15 F.4th at 1174. Importantly, when relying on comparator evidence, the plaintiff must show "that all of the relevant aspects of [her] employment situation were nearly identical to those of the other employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (cleaned up).

Plaintiff's purported comparators do not pass muster. For one, the telework policy provides that an employee's immediate supervisor determines her eligibility for the program, and her division director grants final approval. Def.'s Ex. B at 71–72, 76–78. Plaintiff, however, fails to identify a common decision-maker at either the supervisor or director level.[8] She argues that as COO Goldhaber was the final authority on telework denials and that he "held the functional power to 'grandfather' employees into existing remote arrangements or deny them." *See, e.g.*, Pl.'s Opp'n at 15–16. However, that Goldhaber held some degree of "approval authority" over a COO-wide policy, *id.* at 16, and that he provided the final denial of Plaintiff's telework request in 2015, *see* Def.'s Ex. B at 33, do not create a reasonable inference that Goldhaber was responsible for the approvals of Plaintiff's purported comparators' requests. *Cf.* Pl.'s Opp'n, Ex. 3, ECF No. 60-3, at 27:21–28:3 (Goldhaber testifying he does not recall the telework requests of Plaintiff's putative comparators "[coming] to [his] level" for approval or denial).

---

[8] On the contrary, some of Plaintiff's evidence demonstrates that her putative comparators had different supervisors or were part of a different organization within the agency entirely, so it is unclear whether the COO telework policy applied to them at all. *See, e.g.*, Pl.'s Opp'n, Ex. 2, ECF No. 60-2 [hereinafter Pl.'s Ex. 2], at 29:18–30:1; Pl.'s Opp'n, Ex. 3, ECF No. 60-3, at 28:1–13 (testimony that five proposed comparators did not belong to the COO organization); Pl.'s Ex. 4 at 54:1–18, 89:2–18.

Plaintiff also fails to offer evidence that her telework request was "nearly identical" to those employees whose telework arrangements were approved. *See Burley*, 801 F.3d at 301. She identifies several such employees by name, *see, e.g.*, Pl.'s Opp'n at 15–16, but offers nothing else, such as their titles and job responsibilities or the details of their requests. Plaintiff responds that the lack of such evidence is irrelevant due to the "consistency requirements of the COO's organizational policy." *Id.* at 15. In other words, Plaintiff appears to contend that because the "restrictive face-to-face work policy" applied uniformly as a "top-down mandate," the details of each telework request are immaterial. *Id.* But the record is to the contrary. Even under the restrictive policy change, supervisors were required to consider a variety of factors in assessing continued remote work, such as the nature of the employee's work and the capacity to perform such work remotely. *See* Def.'s Ex. B at 76–78. Plaintiff's failure to present evidence along those lines dooms her effort to prove discrimination through comparators.[9]

Plaintiff's comparator evidence also fails to raise an inference of discrimination with respect to her AWOL charges. The fact that one male employee was permitted extended lunches is not enough, absent additional evidence of that employee's particular leave arrangement. *See* Pl.'s Opp'n at 17; Def.'s Reply at 5.

Though her comparator evidence is wanting, other evidence allows her sex discrimination claim to proceed. An employee can "prov[e] invidious motive" in part by showing that "the employer's general treatment of minority employees (or, in the retaliation context, employees who asserted their Title VII rights) was worse than its treatment of non-minorities (or employees who did not assert their Title VII rights)." *See Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015)

[9] The court recognizes that "[t]he question of whether employees are similarly situated in order to show pretext ordinarily presents a question of fact for the jury." *Wheeler*, 812 F.3d at 1115 (internal quotation marks omitted). But Plaintiff has failed to present even basic details of claimed comparators that would permit the question of similarity to go to a jury.

(cleaned up). The court "must consider whether there is evidence from which a reasonable jury could infer that whatever discriminatory or retaliatory attitudes motivated *other* allegedly unlawful acts might have also infected the actions taken against the plaintiff." *Noisette v. Lew*, 211 F. Supp. 3d 73, 87 (D.D.C. 2016). Having done so, the court finds that evidence of statements made by the supervisors in Plaintiff's managerial chain and first-hand testimony of supervisors' conduct toward Plaintiff and other women in her organization create a reasonable inference of discriminatory animus.

Plaintiff offers first-person testimony that supervisors in her chain-of-command treated women less favorably than men. Bonnie Arthur, a former colleague in Plaintiff's organization within the agency, wrote in her affidavit supporting Plaintiff's EEO complaint that Plaintiff "was excluded from high level meetings" or "forced to stand outside" and that "her work responsibilities [were] marginalized." Pl.'s Opp'n, Ex. 1, ECF No. 60-1 [hereinafter Pl.'s Ex. 1], at 7).[10] Arthur further wrote that she witnessed Bastani "embarrass" Plaintiff on several occasions and "yell at her in meetings." *Id.* at 10. In her deposition, Arthur testified that when she (Arthur) was the only female branch chief, she was prevented from attending meetings and, when she showed up, was told to leave, while her male deputy was permitted to remain. Pl.'s Ex. 6, ECF No. 60-6 [hereinafter Pl.'s Ex. 6], at 10:10–11:20. Indeed, Arthur observed that women were generally "required to undergo more strenuous work requirements, higher scrutiny on work products, and defend any decisions or actions more vigorously," and that "[w]omen [were] definitely treated less favorably than men by management." Pl.'s Ex. 1 at 9; *see also* Pl.'s Ex. 6 at 20:13–21:13 (Arthur testifying the same in her deposition).

[10] Citations to Plaintiff's exhibits are to the original page numbers.

Laura Draski's deposition testimony is to the same effect. She had personal knowledge of "derogatory comments" by Goldhaber about Plaintiff, including that she was "difficult to work with and . . . needs to be managed" and "disparaging" statements concerning Plaintiff's "expertise." Pl.'s Opp'n, Ex. 2, ECF No. 60-2 [hereinafter Pl.'s Ex. 2], at 42:1-14. On one occasion, Goldhaber told Draski directly that Plaintiff "had no place in ASPR." Pl.'s Opp'n, Corrected Ex. 2, ECF No. 64, at 70:20–71:1.[11] In her affidavit supporting Plaintiff's EEO complaint, Draski wrote that male supervisors in her chain of command, including Goldhaber, "advised [her] they felt [Plaintiff] was disruptive and unprofessional and did not want her to represent the office." Pl.'s Opp'n, Ex. 14, ECF No. 60-14 [hereinafter Pl.'s Ex. 14], at 9. Draski noted that as Plaintiff's former direct supervisor she disagreed with this characterization "but was overruled." *Id.* Draski also testified that Goldhaber spoke "disparagingly" about another female employee to other people and similarly "started to marginalize [that employee] and take work away from her." Pl.'s Ex. 2 at 47:4-10.

Draski's affidavit recounts several specific meetings between 2014 and 2015 from which Plaintiff was "ushered . . . out the door" or uninvited "even though she [was] considered a Team Lead" and others at the same level were present. Pl.'s Ex. 14 at 8–9; *see also id.* at 9 (explaining that once Plaintiff became part of the COO organization following the realignment, she was excluded from all "Extended Senior Staff Meetings"). The affidavit references one particular meeting to review briefing material for the IT Investment Review Board, which Plaintiff was

[11] The court notes that to the extent Plaintiff relies on third-party testimony that "consists largely of hearsay, conclusions, speculation, and personal beliefs rather than personal knowledge," such testimony "is not circumstantial evidence of [Defendant's] discriminatory animus." *Brandli v. Micrus Endovascular Corp.*, 209 F. Supp. 3d 356, 362–63 (D.D.C. 2016), *aff'd*, 709 F. App'x 7 (D.C. Cir. 2017). The court will defer ruling on the admissibility of such evidence in the record.

prevented from attending—though she had prepared the briefing and was the "most knowledgeable person in ASPR to present on the information." *Id.* at 9.

Defendant does not contest this evidence and argues only that Goldhaber's statement that Plaintiff "had no place in ASPR" is "vague," "conclusory," and unrelated to any adverse employment action. *See* Def.'s Reply, ECF No. 61 [hereinafter Def.'s Reply], at 6–7. But "[i]t is undisputed that evidence of discriminatory statements or attitudes by a decision-maker may support a finding of discrimination, even if the disparaging comments were not made in the context of the contested employment action." *Stoe v. Barr*, 960 F.3d 627, 643 (D.C. Cir. 2020); *see also* *Morris v. McCarthy*, 825 F.3d 658, 669–70 (D.C. Cir. 2016). And this particular remark—the only one to which Defendant responds—is both specific and "probative evidence of a supervisor's discriminatory attitude," given it was "targeted directly at the plaintiff" and "is one of a pattern of similar remarks" and acts exhibiting animus. *Morris*, 825 F.3d at 670; *cf. Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2012) (concluding that coworkers' testimony regarding employee's harsh treatment was insufficient because "their statements either were too general" or irrelevant to the employer's articulated legitimate, nondiscriminatory reason for the adverse action). In any event, "determining whether a co-worker's specific and relevant, if uncorroborated, testimony is trustworthy is a credibility determination reserved for the jury," and the court will allow the jury that opportunity. *Johnson*, 823 F.3d at 711.

Plaintiff has therefore offered evidence of at least "attitudes suggesting the decision maker[s]" in her organization "harbor[ed] discriminatory animus." *Holcomb*, 433 F.3d at 899. "[A] reasonable jury could treat evidence of a decisionmaker's broad-based [discriminatory] animus or bias as corroborating evidence that such animus or bias infected a particular employment decision." *DeJesus v. WP Co. LLC*, 841 F.3d 527, 536 (D.C. Cir. 2016). After all, "it is not

unreasonable to doubt that an employer quarantines her animus or bias to day-to-day treatment of colleagues, away from [employment] decisions." *Id.* The court accordingly finds that Plaintiff put forth evidence sufficient to defeat summary judgment on her sex discrimination claim. *See, e.g., Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (concluding that a reasonable jury could find that a supervisor's "discriminatory attitude toward women" "affected his decision to pass over [plaintiff] for promotion" and that defendant's "stated reason for [plaintiff's] non-promotion was a pretext for unlawful gender discrimination").

**B.**

The parties do not analyze the evidence separately with respect to Plaintiff's age discrimination claim. Nevertheless, the court finds that evidence insufficient to overcome summary judgment. Plaintiff offers no evidence from which a reasonable jury could infer she was disciplined or denied telework because of her age, and her comparator evidence fails at this stage for the same reasons as with her Title VII claim. The court therefore will grant summary judgment to Defendant as to Plaintiff's ADEA claim.

**C.**

Turning to Plaintiff's retaliation claim, the court finds that evidence of Plaintiff's progressive discipline over a short time period, together with testimonial evidence, support a reasonable inference of retaliatory animus.[12] Because Defendant has offered legitimate, non-retaliatory reasons for disciplining Plaintiff, the only question for the court is "whether [Plaintiff's] evidence creates a material dispute on the ultimate issue of retaliation either directly by [showing]

[12] Plaintiff's retaliation claim is limited to Defendant's conduct following her EEO activity. *See* 42 U.S.C. § 2000e-3(a) (prohibiting employers from discriminating against an employee because she either "opposed . . . an unlawful employment practice" or "participated in any manner" in Title VII proceedings). Plaintiff made initial contact with HHS's EEO representative in August 2015, *see* Am. Compl. at 18; Def.'s Ex. A at 90:8–16, and filed her official EEO complaint in September 2015, *see* Pl.'s Opp'n, Ex. 11, ECF No. 60-11, at 4. *See also* Pl.'s Opp'n at 9–10 (listing relevant protected activity starting in August 2015). Plaintiff therefore cannot claim that Defendant's conduct prior to her EEO activity—including the denial of her June 2015 telework request—were motivated by retaliatory animus.

that a discriminatory reason more likely motivated [Defendant] or indirectly by showing that [Defendant's] proffered explanation is unworthy of credence." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (cleaned up).

At the very least, Plaintiff must show "circumstantial evidence that could reasonably support an inference" that those who disciplined her "had knowledge of [her] protected activity." *Breiterman*, 15 F.4th at 1174 (cleaned up). Here, Plaintiff demonstrates that Bastani knew of Plaintiff's EEO complaint at least as of November 2016 and Goldhaber as of December 2016, when each executed an affidavit in her administrative proceeding. *See* Pl.'s Opp'n, Ex. 10, ECF No. 60-10 [hereinafter Pl.'s Ex. 10], at 36; Am. Compl. at 16. Bastani's affidavit suggests he had knowledge of Plaintiff's EEO activity as early as November 2015. Pl.'s Ex. 10 at 5.

Having cleared that threshold, the court finds that the sum of Plaintiff's evidence of retaliation "casts doubt on [Defendant's] proffered justification." *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014). To start, Defendant's series of disciplinary actions is sufficiently close in temporal proximity to Plaintiff's EEO activity. *See Allen*, 795 F.3d at 40 ("The temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation."). Plaintiff filed her formal EEO complaint in September 2015, and her discipline followed soon after: Plaintiff was reprimanded in December 2015, *see* Def.'s Ex. B at 41–43, charged with AWOL in February and March 2016, Def.'s Ex. A at 107:16–109:20, and issued an initial notice of proposed suspension in March 2016, Def.'s Ex. B at 46–49. And in December 2016, shortly after her supervisors submitted their affidavits in her EEO proceeding, Plaintiff was issued a proposal to remove her from federal service. Am. Compl. at 21; Def.'s Stmt. of Facts ¶ 49. Though temporal proximity alone is not

enough to defeat summary judgment, the fact that her discipline significantly ramped up within months of her EEO complaint is relevant evidence.

The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions is made more probative by evidence that Plaintiff had no prior history of misconduct or even minimal discipline. *See, e.g.*, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (plaintiff established retaliation from both timing of adverse employment action and by showing she had no disciplinary history prior to EEO activity). On the contrary, Plaintiff alleges that from 2010 to 2015, she received several performance-based awards. Am. Compl. at 2–3. Plaintiff's former immediate supervisor, Draski, testified that she considered Plaintiff an "excellent employee" who produced "top notch" work. Pl.'s Ex. 2 at 16:14–15. Draski consistently rated Plaintiff's performance a 4.6 on a five-point scale, which was "in the highest category." *Id.* at 16:10–13. In her written response to Bastani's 2016 notice of proposed suspension, Plaintiff stated she had never received a written reprimand "or the threat of one" in her 33 years of federal service, until December 2015. Pl.'s Opp'n, Ex. 8, ECF No. 60-8, at 15.

Plaintiff also points to critical testimony from Draski and Arthur that Goldhaber "had a history of retaliation," specifically in response to "having or putting forward an EEO accusation." Pl.'s Ex. 2 at 45:8–14. Draski testified in her deposition that after she refused to fire a minority employee per Goldhaber's request that she believed was discriminatory, Goldhaber pulled Draski's already submitted performance evaluation and resubmitted a "[m]uch lower" one. *Id.* at 51:3–15. Draski further testified that when she submitted her affidavit in support of Plaintiff's EEO complaint, she was asked to provide "a lot more direct reporting on all of [Plaintiff's] activities, which took time away from [Draski's] other duties." *Id.* at 58:5–7. Draski's supervisor then also attempted to reduce her telework arrangement, on directive from Goldhaber. *Id.* at

58:14–59:16. Arthur similarly testified that after she submitted her affidavit for Plaintiff, she was removed from meetings though she was a branch chief at the time. Pl.'s Ex. 6 at 10:10–11:20. Her Arthur's telework request also was denied. *Id.* at 18:16–19:2. With this testimonial evidence, Plaintiff's rebuttal to Defendant's proffered justifications "becomes more salient." *Evans v. Sebelius*, 716 F.3d 617, 622 (D.C. Cir. 2013); *see also Allen*, 795 F.3d at 46–47. Taken together, Plaintiff's evidence "provides an adequate basis from which a reasonable jury might infer retaliation." *Jones*, 557 F.3d at 680. The court accordingly denies summary judgment on Plaintiff's retaliation claim.

**C.**

That leaves Plaintiff's constructive discharge claim.[13] A "constructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign." *Taylor v. FDIC*, 132 F.3d 753, 766 (D.C. Cir. 1997) (internal quotation marks omitted). To succeed on her claim, Plaintiff must demonstrate both intentional discrimination or retaliation and "the presence of aggravating factors." *Stewart v. White*, 61 F. Supp. 3d 118, 132 (D.D.C. 2014) (internal quotation marks omitted). "Aggravating factors are those aspects of a discriminatory work environment that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006); *see also Clark v. Marsh*, 665 F.2d 1168, 1175–76 (D.C. Cir. 1981). Because Plaintiff here has made a predicate showing with respect to her sex discrimination and retaliation claims, the court applies an "objective" test to determine "whether

[13] The parties read Plaintiff's Amended Complaint to include a constructive discharge claim under Title VII. *See, e.g.*, Am. Compl. at 22, 25, 26, 27. The court is not convinced that Plaintiff pleaded constructive discharge as a separate basis for Title VII liability. However, because the parties treat it as an independent claim, the court will, too.

a reasonable person in [Plaintiff's] position would have felt compelled to resign under the circumstances." *Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010).

Plaintiff has not made the requisite showing. She has not established the presence of aggravating factors. For instance, Plaintiff was not prevented from "seeking remediation on the job." *Veitch*, 471 F.3d at 130. She filed an EEO complaint and pursued an administrative proceeding, and the record is otherwise replete with evidence of Plaintiff's pushback to her telework denials, reprimand, suspension, and Bastani's supervisory authority. Defendant's progressive discipline of Plaintiff also does not rise to the level of an aggravating factor. *See, e.g.*, *id.* at 130–31; *cf. Clark*, 665 F.2d at 1174–76. Because Plaintiff must show more than discrimination and retaliation for constructive discharge, she does not carry her burden. The court will therefore grant summary judgment to Defendant on Plaintiff's constructive discharge claim.[14]

## V.

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 57, is granted as to Plaintiff's ADEA and constructive discharge claims and denied as to Plaintiff's Title VII discrimination and retaliation claims. The parties shall appear for a remote status conference to discuss a schedule for further proceedings on November 17, 2026, at 10:15 AM.

Dated: November 12, 2026

Amit P. Mehta
United States District Judge

---

[14] Because the court grants summary judgment to Defendant on the merits of Plaintiff's constructive discharge claim, the court will not reach administrative exhaustion. *See* Def.'s Reply at 1–2. Similarly, the court declines to reach exhaustion with respect to Plaintiff's allegedly restrictive reporting requirements. *See* Def.'s Reply at 3. The court need not consider arguments raised for the first time in a reply brief, *see, e.g.*, *Newspaper Ass'n of Am. v. Postal Reg. Comm'n*, 734 F.3d 1208, 1212 (D.C. Cir. 2013), and in any event, the court finds Plaintiff's allegations on this topic do not amount to pleading a discrete adverse employment action.